UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JAMES D. P., )
)
        *Plaintiff* )
)
v. ) No. 2:18-cv-00250-JHR
)
ANDREW M. SAUL, )
*Commissioner of Social Security,*[1] )
)
        *Defendant* )

## *MEMORANDUM DECISION*[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) finding no severe, medically determinable impairment ("MDI") of fibromyalgia and no severe impairment of irritable bowel syndrome ("IBS"), (ii) reaching the unsupported conclusion that he could work in sight of coworkers with no team work or collaborative work, and (iii) failing to undertake an appropriate legal analysis of his subjective statements. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 5-20. I find no reversible error and, accordingly, affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, Finding 1, Record at 20; that he had the severe impairments of spinal disorder, peripheral neuropathy, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"), Finding 3, *id.*; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could occasionally climb ladders, ropes, scaffolds, ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, could not work with tools or on surfaces that vibrate, could perform simple, routine tasks that did not involve interaction with the public, could work in sight of coworkers but could not do team work or collaborative work, and could adapt to simple changes in work routine, Finding 5, *id.* at 23; that, considering his age (46 years old, defined as a younger individual, on his alleged disability onset date, January 23, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 27-28; and that he, therefore, had not been disabled from January 23, 2016, his alleged onset date of disability, through the date of the decision, January 18, 2018, Finding 11, *id.* at 28-29. The Appeals Council declined to review the decision, *id.* at 4-6, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Step 2: Fibromyalgia and IBS

#### 1. Finding That Fibromyalgia Not an MDI

The plaintiff first challenges the ALJ's findings that he did not establish that he had an MDI of fibromyalgia and that, even if he had done so, the impairment was nonsevere. *See* Statement of Errors at 5-14. I conclude that the ALJ's threshold finding that the plaintiff had no MDI of fibromyalgia is supported by substantial evidence, disposing of this point favorably to the commissioner.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." Social Security Ruling 96-4p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2019) ("SSR 96-4p"), at 118.

"It is the plaintiff's burden to produce sufficient evidence to allow the commissioner to reach a conclusion at Step 2; the absence of evidence provides support for a conclusion adverse to

the plaintiff at this point in the sequential evaluation process." *Coffin v. Astrue*, Civil No. 09-487-P-S, 2010 WL 3952865, at *2 (D. Me. Oct. 6, 2010) (rec. dec., *aff'd* Oct. 27, 2010).

Social Security Ruling 12-2p ("SSR 12-2p"), which pertains to fibromyalgia, provides, in relevant part:

> Generally, a person can establish that he or she has an MDI of FM [fibromyalgia] by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone.
>
> ***
>
> We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. [setting forth the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia] or section II.B. [setting forth the 2010 ACR Preliminary Diagnostic Criteria], and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.

SSR 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2019), at 459-60 (footnote omitted).

The 1990 criteria require a showing of (i) "[a] history of widespread pain . . . that has persisted (or that persisted) for at least 3 months[,]" (ii) "[a]t least 11 positive tender points on physical examination" that "must be found bilaterally (on the left and right sides of the body) and both above and below the waist" in 18 specified tender point sites, and (iii) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* at 460-61.

The 2010 criteria require a showing of (i) "[a] history of widespread pain[,]" (ii) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[,]" and (iii) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]" *Id.* at 461 (footnotes omitted).

4

The ALJ explained:

> The evidence does not clearly show that fibromyalgia is a medically determinable impairment in compliance with SSR 12-2p. However, even if the diagnosis were established in accordance with SSR 12-2p it is a non-severe impairment. Veterans Administration ["VA"] records dated January 2017 indicate that the [plaintiff]'s pain complaints were due to "clearly diagnosed" orthopedic problems and not fibromyalgia, and that his mental symptoms were also related to his psychiatric diagnoses. Dr. Maneet Kaur[,] a consulting rheumatologist[,] stated in August 2017 that the [plaintiff]'s symptoms "suggest" a diagnosis of fibromyalgia, but other causes had to be ruled out. Dr. David Talmadge, Chief of Rheumatology, noted that he agreed with the presumptive diagnosis of fibromyalgia syndrome and recommended that the [plaintiff] engage in cognitive behavior therapy, a graded exercise program, [and] consider medication and improvement of sleep hygiene. He did not recommend any follow up treatment needed by the Togus Rheumatology clinic. The [plaintiff] appears to be in compliance with treatment exercise recommendations with good results and reported to his providers that he increased water walking at aquatic class without an increase in pain and wanted to add light weight lifting and the exercise bike to his routine. Moreover, any symptoms of the fibromyalgia syndrome would overlap with his severe orthopedic problems which have been fully considered in his [RFC][.]

Record at 21 (citations omitted).

The plaintiff contends that, in finding no MDI of fibromyalgia, the ALJ applied the wrong legal standard ("clear evidence" rather than "preponderance of the evidence"), ignored relevant findings of treating and examining sources, interpreted raw medical evidence, and erroneously relied on the January 2017 opinion of a non-acceptable medical source, VA examining physician's assistant Molly Jennings, PA-C. *See* Statement of Errors at 8-14. I find no harmful error.

On the first point, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 6-7, the ALJ's statement that the evidence did not clearly show an MDI of fibromyalgia is most reasonably read to mean that she found that the evidence did not support that finding. In any event, her finding stands if, on this court's review, it is supported by substantial evidence.

5

On the second and third points, the plaintiff complains that the ALJ ignored (i) an October 24, 2016, finding of agency examining consultant David Axelman, M.D., that his impairment met the diagnostic criteria for fibromyalgia, (ii) did not rely on either of the agency nonexamining consultants who reviewed his case at the initial and reconsideration levels (Benjamin Weinberg, M.D., and Donald Trumbull, M.D., respectively), and (iii) misconstrued the import of raw medical evidence that she reviewed on her own, including a March 29, 2017, note of Dr. Talmadge and evidence that testing ordered by Dr. Kaur came back negative. *See* Statement of Errors at 12-13 & n.8; Record at 96-98, 113-15, 909-12, 1127-28, 1383-84, 1403-05.

While the ALJ did not discuss the opinions of Drs. Axelman, Weinberg, or Trumbull at Step 2, she addressed them at Step 4. She gave the Axelman opinion "some weight," to the extent that he found the plaintiff able to lift up to 20 pounds occasionally, but deemed his limitations on the plaintiff's ability to sit, stand, and walk unsupported by the evidence and based primarily on the plaintiff's statements, *see* Record at 26, a finding that the plaintiff does not separately challenge, *see* Statement of Errors at 12-13.

The ALJ did not specifically address Dr. Axelman's fibromyalgia findings, *see* Record at 26; however, any error in failing to do so is harmless. As the plaintiff's counsel acknowledged at oral argument, Dr. Axelman's trigger point testing was not specific: he noted "some pain on palpation of the upper thoracic spine and the cervical spine as well as the lumbar spine with some paravertebral point tenderness with a number of trigger points." *Id*. at 911. That falls short of meeting the showing required pursuant to SSR 12-2p's 1990 criteria of "[a]t least 11 positive tender points on physical examination" that "must be found bilaterally (on the left and right sides

of the body) and both above and below the waist" in 18 specified tender point sites. SSR 12-2p at 460.[3]

The ALJ also explained that she gave the February 3, 2017, opinion of Dr. Trumbull "great weight," finding that "the evidence, including that received after [his] review, is consistent with a determination that the [plaintiff] can perform a range of light, simple work that involves limited interaction with others." *Id.* (citations omitted). Dr. Trumbull had found, in relevant part, that there was no confirmation of fibromyalgia by SSR 12-2p standards. *See* Record at 115.[4]

However, the plaintiff contends that the ALJ, as a layperson, misunderstood the significance of raw medical evidence postdating the Trumbull review, specifically, Dr. Talmadge's March 29, 2017, note and reports of testing performed by Dr. Kaur following his August 3, 2017, notation that, while the plaintiff's symptoms suggested fibromyalgia clinically, secondary causes had to be ruled out. *See* Statement of Errors at 12-13 & n.8; Record at 1127-28, 1387-90, 1383-84. He argues that this evidence demonstrates that both rheumatologists performed testing excluding other causes of his symptoms, supplying the evidence required by SSR 12-2p. *See* Statement of Errors at 12-13 & n.8.

I am unpersuaded that the ALJ erred in concluding that the plaintiff failed to meet of his burden of demonstrating that he had an MDI of fibromyalgia. While Dr. Talmadge did summarize the results of testing that presumably was undertaken to rule out other causes of the plaintiff's symptoms, noting "[r]ecent normal labs . . . and normal inflammatory markers[,]" he also noted

---

[3] The plaintiff further argues that Dr. Axelman found that he had fibromyalgia-related symptoms, signs, or co-occurring conditions recognized by SSR 12-2p, including GERD (gastroesophageal reflux disease), IBS, tinnitus, anxiety, sleep disorder/insomnia, and depression. *See* Statement of Errors at 12 n.7. However, Dr. Axelman offered no analysis concerning whether, as required by SSR 12-2p, there was evidence of the exclusion of other disorders that could cause either the symptoms or signs, or the repeated manifestations of symptoms, signs, or co-occurring conditions. *See* SSR 12-2p at 461.

[4] The plaintiff asserts in passing that Dr. Trumbull made "short shrift" of the question of whether his fibromyalgia was an MDI; however, his challenge focuses in the main on the ALJ's treatment of evidence postdating the Trumbull opinion. Statement of Errors at 12-13.

that cervical spine x-rays were abnormal. Record at 1127. More importantly, he did not discuss whether he had reached a firm diagnosis of fibromyalgia based on the exclusion of other possible causes. He simply stated that he "harken[ed] back to the rec's [presumably, recommendations] from the 2/2016" consultation, stating, as he had on February 9, 2016, that he "agreed with the presumptive dx [diagnosis] of FMS [fibromyalgia][.]" *Id.*

While the plaintiff faults the ALJ for failing to note that Dr. Kaur ordered testing that ruled out other causes, *see* Statement of Errors at 13 n.8 (citing Record at 1383-84), he points to no follow-up note of Dr. Kaur interpreting the results or, more importantly, confirming the diagnosis of fibromyalgia based on ruling out other possible causes.

The plaintiff, finally, challenges the ALJ's apparent reliance on the opinion of PA-C Jennings, a non-acceptable medical source, for the proposition that the plaintiff's symptoms were attributable to causes other than fibromyalgia. *See id.* at 11. Any error is harmless. Even absent reliance on the Jennings evidence, the ALJ supportably found that the plaintiff had failed to carry his burden of demonstrating that he had an MDI of fibromyalgia, as discussed above.

### 2. IBS

The ALJ found the plaintiff's IBS nonsevere, explaining:

> The evidence does not show that [IBS] . . . has limited his work capacity more than slightly for at least 12 consecutive months . . . . The [plaintiff] does have a history of complaints of right upper quadrant pain for which he had a cholecystectomy in 2013. [His] testimony that he experienced fecal incontinence is not supported in the medical record for the period of alleged disability. In contrast to his hearing testimony, [he] repeatedly denied that he experienced incontinence of stool to his providers. [He] was treated conservatively for IBS symptoms including recommendation for a high fiber diet, miralax and dulcolax medications when necessary and a trial of Prilosec. He reported to his providers that over the counter miralax w[as] helpful to his symptoms of constipation. Furthermore, the [plaintiff] has maintained a consistent weight. While the record does reflect complaints of chronic abdominal pain[,] physical[] exams have been generally benign reflecting abdomen as soft non-tender and normal bowel sounds.

8

Record at 20 (citations omitted).

The plaintiff does not challenge this reasoning, instead pointing to other evidence of record that he contends supports a finding that he had a severe IBS impairment. *See* Statement of Errors at 14-15. However, a reviewing court "must affirm the [commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). *See also, e.g., Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand."); *Huff v. Colvin*, No. 2:13-cv-378-JDL, 2014 WL 5473036, at *5 n.3 (D. Me. Oct. 27, 2014) (When the position of the commissioner and that of the claimant are "equally reasonable, . . . the court must find for the commissioner pursuant to the applicable standard of review.").

Remand, accordingly, is unwarranted on this basis.

## B. Weighing of Opinion Evidence

The plaintiff next contends that, although the ALJ purported to give great weight to the opinion of agency examining consultant Nadir Behrem, Psy.D., her conclusion that he could work in sight of coworkers with no team work or collaborative work is unsupported by the opinion of Dr. Behrem or any other expert opinion of record. *See* Statement of Errors at 15-16. He adds that the ALJ "commit[ed] reversible error by failing to include at the very least the uncontradicted finding" of treating psychologist Jerold Hambright, Ph.D., and treating psychiatrist Jennifer Parent, M.D., that he "would be 'seriously limited' as that term is defined in the report in terms of

9

his ability to work in coordination with or proximity to others without being unduly distracted[.]" *Id*. at 18; Record at 1051. I find no error in the ALJ's resolution of conflicting evidence of record.

      Dr. Behrem found, in relevant part:

> [The plaintiff's] most significant limitation is his difficulty interacting with others and managing stress. Due to symptoms of PTSD, [he] is likely to become overwhelmed somewhat more easily than an average person. When that takes place, he is likely to become irritable and aggressive. This limits his ability to interact with others, such as coworkers, supervisors, and members of the public.

Record at 917.

      The ALJ explained that, in concluding that the plaintiff could not work with the public but could work in sight of coworkers, with no team work or collaborative work, she had given great weight to Dr. Behrem's opinion and had incorporated his limitations on the plaintiff's ability to interact with others into her RFC finding. *See id*. at 26. As the commissioner argues, *see* Opposition at 12, this was a reasonable translation of the Behrem opinion into RFC terms. Dr. Behrem did not indicate that the plaintiff was precluded from being in coworkers' presence or even from interacting with them; rather, he described him as limited in such interactions. The ALJ captured this, and arguably more, in finding that he could work in sight of (but not with) coworkers. Her mental RFC determination, hence, was supported by substantial evidence.[5]

      Nor did the ALJ err in discounting the Parent and Hambright opinions. The plaintiff complains that, while the ALJ addressed their overarching Step 2 (severity) finding that he was markedly limited in his ability to interact with others, she ignored their specific Step 4 (RFC) finding that he was seriously limited in his ability to work in coordination with or proximity to others without being unduly distracted. *See* Statement of Errors at 18. However, the ALJ's

---

[5] Moreover, the ALJ's mental RFC determination comported with that of agency nonexamining consultant Brian Stahl, Ph.D., which the ALJ accorded great weight. *See* Record at 25, 117-18. Dr. Stahl, who himself gave great weight to the Behrem opinion, *see id*. at 113, found that the plaintiff was unable to work with the public but could work with coworkers and supervisors, although he "would do better in employment with limited interactions[,]" *id*. at 117.

10

explanation of the reasons why she discounted the overarching finding pertained to the sub-finding, as well. She identified medical and other evidence of record that she concluded undermined an assessment of greater limitations in social functioning; for example, evidence that the plaintiff had been able to travel with family to Disney World and that his symptoms of anxiety and irritability had improved. *See* Record at 26 (referring to Step 2 discussion, *id*. at 22).

The plaintiff fails to address the ALJ's finding that the Hambright and Parent opinions were inconsistent with other record evidence, *see* Statement of Errors at 18, a facially valid reason for discounting the opinion of a treating source, *see, e.g*., 20 C.F.R. § 404.1527(c)(4). He therefore, falls short of demonstrating his entitlement to remand on this basis.

### C. Assessment of Plaintiff's Subjective Statements and Activities

The plaintiff next, and finally, argues that, in deeming his subjective statements inconsistent with other evidence of record, the ALJ failed to consider the quality and sustainability of his activities over time, as required by Social Security Ruling 85-16 ("SSR 85-16"), relying on isolated references to activities and findings by treating providers without considering their context. *See* Statement of Errors at 19-20. He asserts, for example, that the ALJ relied on an isolated reference that he had gone hunting on a few occasions and a notation that he had taken a trip with family to Disney World without considering that his mental health providers had encouraged him to undertake such activities as treatment for his severe anxiety and depression. *See id*. at 19 n.15.

As the commissioner observes, *see* Opposition at 18, the plaintiff mounts only limited challenges to the ALJ's evaluation of some of the evidence, *see* Statement of Errors at 20 (conceding that point), dooming his bid for remand on this basis, *see, e.g*., *Little v. Colvin*, No. 2:13-CV-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014) (ALJ's assessment of

claimant's subjective statements "easily survive[d] the applicable, deferential standard of review, both because the [claimant] d[id] not challenge all relevant credibility findings and because the ones that he d[id] challenge . . . withstand scrutiny.").

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 30th day of September, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge